UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| MATTHEW LIEBLONG,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>URSULA ABELLA, S/V TALISKER, IN REM, HER ENGINE, APPURTENANCES, EQUIPMENT, AND TACKLE, DOC. NO. 1269157; DOE DEFENDANTS 1-20, DOE CORPORATIONS 1-20, DOE GOVERNMENT AGENCIES 1-20, DOE PARTNERSHIPS 1-20,<br><br>　　　　　Defendants. | CIV. NO. 19-00425 LEK-WRP |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS VIII AND XI OF PLAINTIFF'S VERIFIED SECOND AMENDED COMPLAINT**

　　　　Before the Court is Defendant/Counterclaim Plaintiff Ursula Abella's ("Abella") Motion for Judgement on the Pleadings as to Counts VIII and XI of Plaintiff's Verified Second Amended Complaint Filed January 24, 2020 ("Motion"), filed on June 12, 2020. [Dkt. no. 38.] Plaintiff/Counterclaim Defendant Matthew Lieblong ("Plaintiff") filed his memorandum in opposition on June 28, 2020, and Abella filed her reply on July 13, 2020. [Dkt. nos. 41, 42.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). On

September 30, 2020, an entering order was issued informing the parties of the Court's rulings on the Motion. [Dkt. no. 43.] This Order supersedes that entering order. Abella's Motion is hereby granted in part and denied in part for the reasons set forth below.

## BACKGROUND

Plaintiff initiated this action on August 7, 2019, he filed his Verified *First Amended* Complaint for Damages ("First Amended Complaint") on August 13, 2019, [dkt. no. 6,] and his Verified *Second Amended* Complaint for Damages ("Second Amended Complaint") on January 24, 2020, [dkt. no. 20].[1] According to the Second Amend Complaint, in December 2017, Plaintiff and Abella entered into a lease with option to purchase agreement ("the Agreement") for Defendant in rem S/V Talisker ("the Talisker"), a "52 foot Schionning Designs customized Waterline 1480 sailing vessel." [Second Amended Complaint at ¶¶ 5, 7.] The initial lease term ran from December 7, 2017 through December 31, 2018, during which time Plaintiff agreed to pay Abella $2,000 per month. [Id. at ¶ 8.] Prior to the termination of the lease, Plaintiff could exercise an option to purchase the Talisker for $195,000 by notifying Abella and making a $500 deposit; upon his execution, all lease payments

---

[1] In one part of the document, the Second Amended Complaint is mistitled "First Amended Complaint."

2

already made would be deducted from the purchase price. [Id. at ¶ 9.]  In exchange for the option to purchase, Plaintiff agreed to pay the legal expenses and court costs for clearing the Talisker's liens and encumbrances, half of which would be deducted from the purchase price (not to exceed $10,000). [Id. at ¶ 10.]  He was also responsible for the maintenance, repair, insurance, and mooring costs for the Talisker. [Id. at ¶ 11.] On December 6, 2018, the parties extended the Agreement to run through June 30, 2019 ("the Extension"). [Id. at ¶ 13.] Between December 2017 and June 2019, Plaintiff paid: lease payments in the amount of $38,000; insurance and mooring costs of $13,869.26; legal costs of $8,895.47; and maintenance and repair costs of $231,074.44. [Id. at ¶ 12.]

On May 14, 2019, Abella, claiming scrivener's error, informed Plaintiff that she wanted to "reform the contract for the purchase price of $295,000." [Id. at ¶ 15.]  Ten days later, Plaintiff informed Abella he intended to exercise the purchase option in the Agreement for the original price of $195,000, made his $500 deposit, and provided proof he had financing for the remainder. [Id. at ¶ 16.]  Abella refused to honor the option contract, terminated the lease, "had her friends send threatening text messages to Plaintiff," and demanded Plaintiff vacate the Talisker  [Id. at ¶ 17.]

Plaintiff vacated the vessel, and returned to Little Rock, Arkansas. [Id.]

The Second Amended Complaint alleged : 1) breach of written contract ("Count I"); 2) breach of the implied warranty of good faith and fair dealing ("Count II"); 3) intentional misrepresentation ("Count III"); 4) negligent misrepresentation ("Count IV"); 5) unjust enrichment ("Count V"); 6) conversion ("Count VI"); 7) quantum meruit ("Count VII"); 8) a claim seeking a maritime lien against the Talisker for necessaries, pursuant to 46 U.S.C. § 31301, *et seq.* ("Count VIII"); 9) fraudulent deceit ("Count IX"); 10) promissory estoppel ("Count X"); and 11) a claim seeking a declaratory judgment ("Count XI").

In the Motion, Abella seeks judgment on the pleadings as to Counts VIII and XI and asks the Court to "issue a declaratory judgment that [Plaintiff] does not hold a valid maritime lien against the [Talisker]." [Mem. in Supp. of Motion at 13.]

**DISCUSSION**

I.  **Jurisdiction and Applicable Law**

  A.  **Admiralty Jurisdiction Pursuant to Contract**

"As a general rule, admiralty law applies to all maritime contracts." Aqua-Marine Constructors, Inc. v. Banks, 110 F.3d 663, 670 (9th Cir. 1997) (citing Insurance Co. v.

4

Dunham, 78 U.S. (11 Wall.) 1, 29, 20 L. Ed. 90 (1870)); see also 28 U.S.C. § 1333(1) (stating, in effect, same). "[T]he fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce." Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 25 (2004) (citation, emphasis, and internal quotation marks omitted). "It is, therefore, the subject matter (rather than the place of execution or place of performance) of a contract which determines the existence of federal maritime jurisdiction over a contractual claim." Aqua Marine Constructors, 110 F.3d at 671 (some citations omitted) (citing North Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co., 249 U.S. 119, 39 S. Ct. 221, 63 L. Ed. 510 (1919)). "If the subject of the contract relates to the ship and its uses as such, or to commerce or navigation on navigable waters, or to transportation by sea, the contract is maritime." Id. (citation omitted). A charter is clearly a maritime contract. See Simon v. Intercontinental Transp. (ICT) B.V., 882 F.2d 1435, 1441 (9th Cir. 1989) (some citations omitted) (citing Armour & Co. v. Ft. Morgan S.S. Co., 270 U.S. 253, 259, 46 S. Ct. 212, 214, 70 L. Ed. 571 (1926)).[2] At least part of the Agreement is a charter

---

[2] Simon refers to a "charter party." 882 F.2d at 1441. "The term 'charter party,' often shortened to 'charter,' refers to the document setting forth the terms of a contract when one person (the 'charterer') takes over the use of the whole ship belonging to another (the 'owner')." Int'l Marine Towing, Inc.
(. . . continued)

5

because it identifies the terms under which Plaintiff would take over the use of the Talisker, a ship belonging to Abella. See Second Amended Complaint at ¶¶ 7-8. Therefore, the portion of the Agreement related to the charter of the Talisker is a maritime contract. See Simon, 882 F.2d at 1441.

However, the Agreement also contained an option to purchase the Talisker.[3] [Second Amended Complaint at ¶ 9.]

> The classification problem becomes complex because, historically, charters are maritime contracts, interpreted by admiralty courts, Morewood v. Enequist, 1860, 64 U.S. (23 How.) 491, 16 L. Ed. 516; see 1 *Benedict on Admiralty* § 66, and cases cited therein, while contracts for the sale of a vessel have been held non-maritime. The Ada, 2nd Cir. 1918, 250 F. 194; Grand Banks Fishing Co. v. Styron, D. Me. 1953, 114 F. Supp. 1. Generally, whether or not an agreement passes title to a vessel is to be determined by state law. See First National Bank & Trust Co. of Vicksburg, Miss. v. The Seneca, E.D. La. 1960, 179 F. Supp. 847.

---

v. S. Leasing Partners, Ltd., 722 F.2d 126, 130 (5th Cir. 1983) (citing G. Gilmore & C. Black, *The Law of Admiralty* § 4-1, at 193 (2d ed. 1975)).

[3] See Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) ("Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." (brackets, citation, and quotation marks omitted omitted)); Damon Key Leong Kupchak Hastert v. Westport Ins. Corp., 421 F. Supp. 3d 946, 953–54 (D. Hawai`i 2019), *appeal dismissed*, No. 19-17276, 2020 WL 2204276 (9th Cir. Feb. 26, 2020) ("[T]he construction and legal effect to be given a contract is a question of law." (alteration in Damon) (citing Brown v. KFC National Mgmt. Co., 921 P.2d 146, 159 (Haw. 1996))).

Kane v. Motor Vessel Leda, 355 F. Supp. 796, 800 (E.D. La. 1972), *aff'd*, 491 F.2d 899 (5th Cir. 1974).[4]  The option in the Agreement relates to the passing of the title of the Talisker, therefore Hawai`i law applies.  Under Hawai`i state law:

> An "option" is defined in relevant part as a:
>
>> Right of election to exercise a privilege. Contract made for consideration to keep an offer open for prescribed period.  A right, which acts as a continuing offer, given for consideration, to purchase or lease property at an agreed upon price and terms, within a specified time. . . .  An option to purchase or to sell **is not a contract to purchase or sell**, as optionee has the right to accept or to reject the offer, in accordance with its terms, and **is not bound**.
>
> Black's Law Dictionary 1094 (6th ed. 1990) (emphases added) (citations omitted).  See also In re Estate of Damon, 5 Haw. App. 304, 311, 689 P.2d 204, 208 (1984) (defining "option to purchase real property").

Arthur v. Sorensen, 80 Hawai`i 159, 165 n.14, 907 P.2d 745, 751 n.14 (1995) (emphases added).  Thus, pursuant to the Agreement, in addition to the right to use and possess the Talisker under the lease terms, for a specified time, Plaintiff also owned the right to purchase the vessel for an agreed upon price and terms.

---

[4] Courts within the Ninth Circuit turn to "the U.S. Court of Appeals for the Fifth Circuit, [as] the federal courts' cutwater in matters maritime."  See Aqua-Marine Constructors, 110 F.3d at 673.

A contract for the sale of a vessel is not a maritime contract and therefore does not give rise to admiralty jurisdiction.  Cary Marine, Inc. v. Motorvessel Papillon, 872 F.2d 751, 755 (6th Cir. 1989); accord Richard Bertram & Co. v. Yacht Wanda, 447 F.2d 966, 967 (5th Cir. 1971) (per curiam) (affirming district court order included in the appendix).[5] Under the conceptual approach, admiralty jurisdiction depends on "whether the contract references 'maritime service or maritime transactions.'"  ProShipLine Inc. v. Aspen Infrastructures Ltd., 609 F.3d 960, 967 (9th Cir. 2010) (quoting Norfolk, 543 U.S. at 24, 125 S. Ct. 385).  The option to purchase was one step removed from the actual contract for sale, because, as an option, it merely held open Abella's offer for Plaintiff to buy the Talisker.  Regardless, the transfer of the ultimate ownership of the Talisker, the transaction underlying the option to purchase, was not a maritime service or transaction, therefore the option itself, which held open the non-maritime offer, is also a non-maritime contract.

> The Agreement would therefore be a "mixed" maritime and non-maritime contract.  Ordinarily, a contract must be "wholly maritime" in nature to be cognizable in admiralty.  Simon v. Intercontinental Transp.

---

[5] The Ninth Circuit's unpublished but persuasive opinion in All Car Leasing Serv. Co. v. Campbell, No. 86-3680, 1990 WL 125337, *1  (9th Cir. Aug. 29, 1990), states the same.

8

> (ICT) B.V., 882 F.2d 1435, 1442 (9th Cir. 1989).
> A claim on a "mixed" contract may be adjudicated
> in admiralty only if (1) the non-maritime
> obligations were "merely incidental" to the
> primarily maritime nature of the contract (in
> which case a federal admiralty court may hear
> both the maritime and non-maritime claims), or
> (2) the maritime claims could be severed from the
> non-maritime claims (in which case the federal
> admiralty court would hear only the severed
> maritime claims). Id.

See Aqua-Marine Constructors, 110 F.3d at 672-73 n.6.

The option to purchase the Talisker was not merely incidental to the Agreement. It was a necessary component in Plaintiff's decision to enter into the Agreement. [Second Amended Complaint at ¶ 32.] Therefore, the "merely incidental" exception to the general rule that a contract must be wholly maritime to give rise to admiralty jurisdiction does not apply.

The second exception presents a closer question. Plaintiff alleges that he provided necessaries to the Talisker worth $231,074.44, and therefore a maritime lien arises in his favor. [Id. at ¶¶ 55-56.] However, he also alleges he agreed to make all repairs and to pay for the maintenance under the terms of the lease (charter), and pay the legal fees under the terms of the option to purchase. [Id. at ¶¶ 10-11.] He alleges, in effect, that he would have been obliged to make the repairs and pay the maintenance costs pursuant to the charter portion of the Agreement alone, even if he had decided to not exercise his option to purchase the Talisker. But, he alleges

9

he would not have entered into the Agreement and paid such costs under the charter terms but for the option to eventually purchase the Talisker. [Id. at ¶ 32.] Therefore, to the extent that any of his allegations arise from the maritime portion of the Agreement, his maritime and non-maritime claims are inextricably related, and non-severable. Thus, the second exception to the "wholly maritime" rule also does not apply, and admiralty jurisdiction is not available on the basis of a maritime contract alone.

**B.   Admiralty Jurisdiction Pursuant to Maritime Lien**

Admiralty jurisdiction may also be established by way of the Maritime Lien Act, 46 U.S.C. § 31342.

> [T]he Maritime Lien Act establishes specific elements, which if met, permit [a plaintiff] to invoke the admiralty jurisdiction of the district court. If [a person] (1) provided necessaries (2) to the Ships (3) on the order of the Owners or a person authorized by the Owners, then [he] may bring an action in admiralty to enforce the resulting necessaries lien. [The person] need not demonstrate any other jurisdictional element, and [he] certainly need not rely on the [the other party's] breach of a maritime contract to invoke admiralty jurisdiction.

Ventura Packers, Inc. v. F/V Jeanine Kathleen, 305 F.3d 913, 921 (9th Cir. 2002). Therefore, Plaintiff's invocation of admiralty jurisdiction is contingent on the merits of the asserted maritime lien itself.

**II. <u>Maritime Lien</u>**

Abella argues the Agreement constitutes a bareboat charter, and, as a bareboat charterer, Plaintiff cannot assert a maritime lien against the Talisker. Plaintiff does not respond to the substance of either of Abella's assertions. Instead, Plaintiff argues disputed issues of fact with respect to contract formation preclude entry of judgment on the pleadings.

**A.  <u>Bareboat Charter</u>**

The Court agrees with Abella that, accepting Plaintiff's allegations as true, the Agreement constitutes a bareboat charter.

> There are three principal forms of charter agreements: the time charter, the voyage charter, and the bareboat charter. 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 11-1 (4th ed. Westlaw 2010). Time charters and voyage charters are non-demise charters; bareboat charters are demise charters. "The distinction between the demise and non-demise charters depends on the degree of control retained by the owner of the vessel." <u>Forrester v. Ocean Marine Indem. Co.</u>, 11 F.3d 1213, 1215 (5th Cir. 1993).

<u>Limon v. Berryco Barge Lines, L.L.C.</u>, Civil Action No. G-07-0274, 2011 WL 835832, at *4 (S.D. Tex. Mar. 7, 2011). As this district court has stated:

> The essence of a bareboat or demise charter is that the charterer stands in the shoes of the owner in almost every respect. <u>See</u> <u>Guzman v. Pichirilo</u>, 369 U.S. 698, 699–700, 82 S. Ct. 1095, 8 L. Ed. 2d 205 (1962) (noting that a bareboat charter is "tantamount to, though just short of, an outright transfer of ownership"). "Under a

11

> bareboat charter, the owner gives the charter full possession and control of the vessel for a period of time." Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc., 1 F.3d 848, 849 n.1 (9th Cir. 1993). "The charterer is responsible for directing the operations of the vessel and providing the master and crew." Id. Anything short of a complete transfer is not a bareboat or demise charter. See Guzman, 369 U.S. at 699, 82 S. Ct. 1095.

Madeja v. Olympic Packer, LLC, 155 F. Supp. 2d 1183, 1203 (D. Hawai`i 2001), *aff'd*, 310 F.3d 628 (9th Cir. 2002). A demise or bareboat charter need not be in writing; it "may be implied from the circumstances concerning the actual possession and use of a vessel." St. Paul Fire & Marine Ins. Co. v. Vest Transp. Co., 666 F.2d 932, 939 (5th Cir. 1982) (per curiam) (affirming district court order included in the appendix) (citing Guzman v. Pichirilo, 369 U.S. 698, 700, 82 S. Ct. 1095, 1096, 8 L. Ed. 2d 205, 208 (1962)).

Plaintiff's argument is that the parties did not enter into a demise charter because the Agreement is either void or voidable on the basis of faults related to contract formation. However, because a writing is not required to form a bareboat or demise charter, Plaintiff has failed to address the substance of Abella's argument, and has failed to present any indication that the parties did not form a bareboat charter. "The Court may construe Plaintiff's failure to address the arguments as a concession that they are valid reasons for dismissal." See

12

Sohmer v. Internal Revenue Serv., Case No. EDCV 18-01172-AB(RAO), 2018 WL 6133724, at *11 (C.D. Cal. Oct. 5, 2018) (citation omitted). Even more compelling than Plaintiff's silence are his allegations in the Second Amended Complaint that consistent with a bareboat charter. See Second Amended Complaint at ¶¶ 12 (alleging he paid the costs and undertook significant repairs of the Talisker), 17 (alleging he vacated the Talisker upon Abella's refusal to honor the option to purchase).[6] Similarly, Plaintiff was responsible for the Talisker's expenses, insurance costs, and lease payments regardless of whether he used the vessel; Abella was not present on the Talisker nor is it alleged that she supplied a crew; and she did not agree to reimburse Plaintiff for equipment, supplies, or repairs. All of these factors suggest that the Agreement, at least as to the charter provisions, constituted a bareboat charter. See Comar Marine, Corp. v. Raider Marine Logistics, L.L.C., 792 F.3d 564, 570 (5th Cir. 2015)

---

[6] The factual allegations in the Second Amended Complaint are limited, for example, as suggested above, the only direct indication Plaintiff ever had actual possession of the Talisker is an allegation that he vacated it. However, the allegations that he: entered into a lease; [Second Amended Complaint at ¶ 8;] paid the monthly amount due; [id. at ¶ 12(a);] and later involuntarily vacated the vessel, [id. at ¶ 17,] sufficiently indicate he had possession and control of the Talisker.

(identifying the above factors as indicia of a bareboat charter (citation omitted)).

Furthermore, although Abella maintained some oversight authority over the Talisker, see Motion, Decl. of Jesse J. T. Smith, Exh. 2 (Agreement attached to Complaint), (placing restrictions on use and movement of the Talisker),[7] the restrictions are consistent with a bareboat charter. Plaintiff's rights of use fell into the category of possession that was "tantamount to, though just short of, an outright transfer of ownership." See Guzman, 369 U.S. at 700; see also Stolthaven Houston, Inc. v. Rachel B., No. 08 Civ. 4327(RPP), 2008 WL 2854278, at *5 (S.D.N.Y. July 18, 2008) (stating that "a registered owner properly may retain some modicum of oversight of the vessel in a bareboat charter party, since a bareboat charter is, after all, a lease and not a complete transfer of title").

Therefore, based on the allegations in the Second Amended Complaint, this Court finds, for purposes of the instant Motion, that Plaintiff and Abella entered into a bareboat charter.

---

[7] Although he cites to it, Plaintiff did not attach the Agreement to his Second Amended Complaint. Neither party disputes the authenticity of the Lease Agreement with Option to Purchase attached to the Complaint.

14

### 1. Bareboat Charterers and Maritime Liens

The Fifth Circuit has held that, "[a]lthough the bareboat charterer might be characterized as the owner *pro hac vice* as to third parties, the charterer is still the charterer as to the vessel owner and is thus entitled to a maritime lien against the vessel for the owner's breach of the charter party." Int'l Marine Towing, Inc. v. S. Leasing Partners, Ltd., 722 F.2d 126, 130 (5th Cir. 1983); but see Admiral Cruise Servs., Inc. v. M/V St. Tropez, CASE NO. 05-60024-CIV-JORDAN, 2006 WL 8432173, at *4 (S.D. Fla. Mar. 31, 2006) (ruling that the owner pro hac vice of a vessel could not assert a maritime lien against the vessel for necessaries (some citations omitted) (citing Sasportes v. M/V Col de Copacabana, 581 F.2d 1204, 1207 (5th Cir. 1978)).  In the absence of a blanket prohibition on bareboat charterers asserting maritime liens, the Court turns next to the elements of a maritime lien.

### 2. Elements of a Maritime Lien

The things that Plaintiff provided to the Talisker can be divided into two categories: 1) insurance, mooring, maintenance, and repairs ("Maintenance Costs"); [Second Amended Complaint at ¶ 11;] and 2) the legal expenses and costs related to clearing preexisting liens and other encumbrances ("Legal Costs"), [id. at ¶ 10].  According to the Second Amended Complaint, the Maintenance Costs were required under the terms

15

of charter, that is, just like the lease payment, the Maintenance Costs constituted Plaintiff's consideration to Abella in exchange for the use and possession of the Talisker. [Id. at ¶ 11.] In contrast, the Legal Costs were his consideration for the option to purchase the Talisker. Id. at ¶ 10; see also Motion, Decl. of Jesse J.T. Smith, Exh. 2 (Agreement attached to Complaint) at PageID# 365 (stating that, ("[i]n consideration of the exclusive option to purchase, [Plaintiff] shall be responsible for legal expenses and associated court costs involved in clearing vessel liens and encumbrances" and that the Legal Costs constituted consideration for the option to purchase). Therefore, the costs shall be addressed separately.

### a. Maintenance Costs

In the Motion, Abella appears to concede both that the Maintenance Costs are necessaries and that they were provided to the vessel. However, she argues they were not provided on the order of the owner. The Court agrees. "[U]nder a bareboat charter, '[s]ervices performed on board the ship are primarily for [the charterer's] benefit.'" Comar Marine, 792 F.3d at 570 (some alterations in Comar Marine) (quoting Reed v. S.S. Yaka, 373 U.S. 410, 412, 83 S. Ct. 1349, 10 L. Ed. 2d 448 (1963)). Thus, "when, and if, the charterer operates the vessel he must supply also such essential operating expenses." Id. (quoting

16

Walker v. Braus, 995 F.2d 77, 80-81 (5th Cir. 1993)).  Plaintiff had operational control over the Talisker pursuant to a bareboat charter when he furnished the Maintenance Costs.  Therefore, he was required to pay the essential operating expenses, such as the Maintenance Costs, by virtue of his position as charterer, so it cannot be the case that they were furnished on the order of Abella.  See Ventura Packers, 305 F.3d at 921.  Abella is entitled to Judgment on the pleadings with respect to the Maintenance costs.

### b. Legal Costs

"[M]odern admiralty jurisprudence interprets 'necessaries' broadly, as anything that facilitates or enables a vessel to perform its mission or occupation." Id. at 923 (some citations omitted) (citing Equilease Corp. v. M/V Sampson, 793 F.2d 598, 603 (5th Cir. 1986)).  However, legal costs are explicitly excluded from the category of necessaries.  Gulf Marine & Indus. Supplies, Inc. v. Golden Prince M/V, 230 F.3d 178, 180 (5th Cir. 2000) (collecting cases).  Therefore, Plaintiff cannot satisfy the first Ventura Packers element of a maritime lien with respect to the Legal Costs, and Abella is accordingly entitled to judgment on the pleadings with respect to the same.

For these reasons, the Court concludes that Plaintiff has failed to state a claim upon which relief can be granted in

relation to a maritime lien, and the Motion is granted to the extent that Count VIII is dismissed.  However, due to the allegations raised in the Memorandum in Opposition, Plaintiff has leave to file a motion for leave to file an amended complaint.  See Curry v. Baca, 497 F. Supp. 2d 1128, 1138 (C.D. Cal. 2007) (stating that a district court has discretion to grant partial judgment on the pleadings or grant leave to amend (citation omitted)).

### B. Additional Matters

With regard to Count XI, the Court notes that:

> The Declaratory Judgment Act provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  This statute does not create new substantive rights, but merely expands the remedies available in federal courts.  Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp., 642 F.3d 849, 853 (9th Cir. 2011). . . .

Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc., 771 F.3d 632, 635 (9th Cir. 2014) (some alterations in Shell Gulf).  Because Plaintiff's request for declaratory judgment is request for a remedy premised upon, and redundant to, Count VIII, Count XI is also dismissed.  See Ballard v. Chase Bank USA, NA, Civil No. 10cv790 L(POR), 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010)("A claim for declaratory relief

rises or falls with the other claims." (quotation marks, brackets, and citation omitted)).

In the Motion, Abella requests that declaratory judgment be granted in her favor. However,

> a party may not make a **motion** for declaratory relief, but rather, the party must bring an **action** for a declaratory judgment. Insofar as plaintiffs seek a motion for a declaratory judgment, plaintiffs' motion is denied because such a motion is inconsistent with the Federal Rules. The only way plaintiffs' motion can be construed as being consistent with the Federal Rules is to construe it as a motion for summary judgment on an action for a declaratory judgment.

<u>Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.</u>, 560 F.3d 935, 943 (9th Cir. 2009) (emphases in <u>Kam-Ko Bio-Pharm</u>) (citation omitted). The Court declines to construe Abella's request as a motion for summary judgment on an action for declaratory judgment for failure to comply with Fed. R. Civ. P. 56 and Local Rule 56.1. Therefore, her request for declaratory judgment is denied.

In his Memorandum in Opposition, Plaintiff argues that, "even if there is no maritime lien, Plaintiff should still be allowed to assert these damages based on his reliance on the Agreement and Defendant's failure to perform." [Mem. in Opp. at 9-10 (citation omitted).] The Motion requests no ruling on the issue of what remedies are available, other than the maritime lien. Therefore, Plaintiff's argument is rejected as

inapplicable to the issues presented in the matters currently before the Court.

## CONCLUSION

For the foregoing reasons, Abella's Motion for Judgment on the Pleading as to Counts VIII and XI of Plaintiff's Verified Second Amended Complaint Filed January 24, 2020, filed June 12, 2020, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED to the extent that Plaintiff's Counts VIII and XI, which seek the imposition of a maritime lien, are dismissed. Plaintiff is GRANTED leave to amend, insofar as he has leave to file a motion seeking leave to file a third amended complaint to cure the defects in Count VIII. Plaintiff's motion for leave must be filed by **December 23, 2020**.

The Motion is DENIED to the extent that Abella requests the entry of a declaratory judgment in her favor.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 30, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MATTHEW LIEBLONG VS. URSULA ABELLA, ET AL.; CV 19-00425 LEK-WRP; ORDER GRANTING IN PART AD DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADING AS TO COUNTS VIII AND XI OF PLAINTIFF'S VERIFIED SECOND AMENDED COMPLAINT**